# IN THE COURT OF APPEALS OF IOWA

No. 22-1290
Filed November 17, 2022

**IN THE INTEREST OF J.H. and J.H.,**
**Minor Children,**

**J.H., Father,**
    Appellant,

**A.T., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Jason A. Burns, District Associate Judge.

A mother and father appeal the termination of their parental rights. **AFFIRMED.**

Sarah Hradek, Iowa City, for appellant father.

Sara Strain Linder of Bray & Klockau, Iowa City, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Anthony Haughton of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

The juvenile court terminated the parental rights of A.T., the mother, and J.J.H., the father, to their two children—who both are under the age of three. This appeal addresses the parents' objections to that determination.

The father and mother each maintain the State failed to prove the statutory grounds for termination, specifically that the children could not be returned to their custody at the time of the termination hearing; that termination of their parental rights is not in the children's best interests; and that the juvenile court should have avoided termination via the permissive exception found in Iowa Code section 232.116(3)(c) (2022). Additionally, the mother argues the juvenile court should have granted her a six-month extension.

Because the State proved the statutory ground for termination, termination is in the best interests of the children, no permissive exception was warranted in this case, and a six-month extension for the mother would have been inappropriate, we affirm.

I. Facts and Prior Proceedings.

On July 11, 2021, the mother tested positive for marijuana, methamphetamine, and amphetamine just before giving birth to the younger child; the mother admitted to using methamphetamine that day. The Iowa Department of Health and Human Services (DHHS)[1] was alerted. While in the hospital, the child's umbilical cord also tested positive for methamphetamine and

---

[1] In 2022, the Iowa legislature merged the department of human services with the department of public health into the Iowa Department of Health and Human Services, with the transition starting July 1, 2022. *See* 2022 Iowa Acts ch. 1131 § 51.

amphetamines. In the days following, the father tested positive for methamphetamine and marijuana. About two weeks later, the mother left the shelter where the family was staying to go see a friend, leaving the older child, who was ten-months old, crying and alone in the family's room. Now, with combined concerns about supervision and drug use, the State filed for temporary removal on July 26, which the juvenile court granted. The children were placed in foster care and adjudicated children in need of assistance (CINA).

On a positive note, the parents began participating in Family Treatment Court in the fall of 2021. The mother completed a substance-abuse evaluation and was recommended to complete inpatient treatment, which she began in December 2021. But the steps forward stalled when she was discharged within the month after a series of behavioral violations. The father was also evaluated and began attending intensive outpatient treatment in February 2022, but he too stalled progress when he was discharged in April for non-attendance. In March, after continuing to deny drug use despite positive tests and allegations, it was learned that the mother was trying to sell mushrooms to others in treatment.[2] With no progress on the substance-abuse concerns, the parents were discharged from Family Treatment Court.

Both parents received a second evaluation, the mother in March and the father in May, but they did not provide the results to their DHHS caseworker.

---

[2] In February, the individual administering the parents' drug tests reported the mother had asked if mushrooms would show up on the screening. A few weeks later, workers at the substance-abuse-treatment center the mother attended received word from one of their participants that the mother attempted to sell them mushrooms.

Instead, the caseworker saw the evaluations for the first time when the parents each submitted them as evidence at the termination hearing. The evaluations each recommended relapse preventions groups; the mother asserted she was attending as needed and the father said he was signed up to begin as well.[3] Both parents said they were attending weekly virtual Alcoholics Anonymous meetings together. Still, DHHS's last report to the court ahead of the June 16 termination hearing stated that, of the tests the mother appeared for, she had fourteen positive drug tests and three negative tests; on the father's part, he had eleven positive and five negative tests. Both parents had also missed some drug tests and had multiple tests that appeared to have been tampered. At that time, the most recent drug test—June 8—was positive for both parents and showed signs of tampering. At trial, both parents questioned the validity of the tests. The mother stated her last use of methamphetamine and marijuana was in November; she claimed she had not used any substances after finding out she was now again pregnant. The father also stated his last methamphetamine use was in November and he last used marijuana in January. The children's maternal grandmother and the mother's employer—who each regularly see the parents—both testified they had not noticed behavioral indicators of use by the parents.

To her credit, the mother completed a mental-health evaluation, which recommended individual therapy. At the time of the termination hearing, she was attending therapy once a month. The father was also supposed to receive an

---

[3] The DHHS caseworker had not received verification that the parents were attending.

evaluation, but the caseworker had no indication the father had complied at the time of the termination hearing.

Early in the case, the parents struggled to attend visits with the children. Even as their attendance became more regular, there were issues with the parents coming unprepared or allowing other adults, not approved by DHHS, to be present. The parents did successfully complete the Nurturing Parent Program and visits typically went well—the parents were attentive to the children and the children were not fearful of them. But the continued positive drug tests caused visitation to remain fully supervised.

The parents have not been able to maintain stable housing during the case. After they left the homeless shelter, they fluctuated between staying with friends and family or short-term rentals. Often, DHHS had no information about where the parents were living. At the time of the termination hearing, the parents reported they intended to move in with the children's paternal grandmother because of a tumultuous relationship with their landlord while applying for another apartment. The juvenile court referenced a "common theme" from the parents—they have many plans but often fail to follow through with the stated intentions. Yet, at the termination trial, the parents had employment, meeting one of the goals established by DHHS.

The State filed for termination of parental rights in January 2022, citing concerns about the parents' housing stability and continued substance abuse. After a hearing, both parents' parental rights were terminated under Iowa Code section 232.116(1)(h).

II. Analysis.

We review termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Each parent separately appeals the termination of their parental rights. Both parents argue the State failed to prove the ground for termination, termination is not in the children's best interests, and the court should have used the permissive exception found in Iowa Code section 232.116(3)(c) to avoid termination; the mother additionally asserts the court should have granted her a six-month extension. We address each in turn.

A. Statutory Grounds for Termination.

Each parent argues the State did not prove, "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time," a necessary element to terminate their parental rights under section 232.116(1)(h).[4] *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2014) (using the termination hearing as the benchmark time for section 232.116(1)(h)).

The father argues the juvenile court erred in relying on Iowa Code section 232.102(5) when finding the children could not be safely returned to his care. The father is correct that this code section was deleted as of July 1, 2022. *See* 2022

---

[4] Section 232.116(1)(h) also requires the court to find:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

Neither parent contests these other elements.

Iowa Acts ch. 1198 § 47. Setting aside the fact this petition for termination was filed before the change in law, section 232.102(5) dealt with allowing children to participate in extracurricular activities while in foster care—we believe this was a scrivener's error on the part of the juvenile court. We assume the juvenile court meant to reference section 232.102(4)(a)(2), which dictates:

> Custody of the child[ren] should not be transferred unless the court finds there is clear and convincing evidence that:
> (1) The child[ren] cannot be protected from physical abuse without transfer of custody; or
> (2) The child[ren] cannot be protected from some harm which would justify the adjudication of the child[ren] as a [CINA] and an adequate placement is available.

The father also argues he has been addressing his substance abuse and has maintained sobriety by the time of the termination hearing despite his positive drug tests. Further, he argued the children could live with him and the mother at the paternal grandmother's home. The mother similarly argues her substance abuse does not prevent the children from being safely returned to her because she is participating in the recommended treatment. Both parents point to their concerns about the validity of the drug testing and the testimony of witnesses who said the parents were not displaying behavioral indicators of use.

Like the juvenile court, we do not find the parents' denials of active and continuing methamphetamine use to be credible in the face of their consistent positive drug tests. Each parent regularly tested positive for methamphetamine as late as the weeks leading up to the termination hearing, which itself would prevent the children from being returned to their parents' care. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."); *In re P.D.*,

No. 19-1824, 2019 WL 6894420, at *1 (Iowa Ct. App. Dec. 18, 2019) ("Given the mother's continued use of methamphetamine, the child would be at risk of adjudicatory harm."). Neither parent presented any evidence the tests provided were faulty or were repeatedly generating false positives; we, like the juvenile court, do not find their concerns credible. And even if we take the parents' word for it that they are actively engaging in treatment to combat their drug use, they have not met success in the battle of achieving and maintaining sobriety. *See A.B.*, 815 N.W.2d at 776 ("[B]ecause of [the parent's denial of drug use, the parent's] drug problem was unresolved, and thus, he was 'not in a position to provide the safe and stable home [the children] need and deserve.'").

On top of the substance abuse, though the parents found a place to land for the moment, they have not shown an ability to maintain safe, stable housing for these children. *See In re J.A.*, No. 21-0157, 2021 WL 1399770, at *2 (Iowa Ct. App. Apr. 14, 2021) ("We acknowledge well-established case law that a parent's impoverished condition should not be the sole basis of a termination decision. That said, a parent must be able to provide children with the basic necessities of life, including a roof over their heads and food on the table." (internal citations omitted)).

We applaud the progress the parents have made in completing parenting programing and finding employment, as well as the mother's efforts to address her mental-health concerns. Still, because the parents have not yet tackled their substance abuse and housing instability, we find clear and convincing evidence on our de novo review that the children could not be returned to their care at the time of the termination hearing.

B. Best Interests.

The parents each argue termination is not in their children's best interest. In determining the children's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). The "defining elements in a child's best interest[s]" are their safety and need for permanency. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citation omitted).

Both parents argue that the strength of the bond between them and their children is strong, meaning termination is not in the children's best interests. They also argue there was no evidence the children have integrated into their foster family. *See* Iowa Code § 232.116(2)(b). The parents mischaracterize the relationship between the foster parents and the children. While the relationship was not widely discussed at trial and the foster parents have been supportive of reunification, the DHHS caseworker testified the children were bonded with the foster parents and are having their needs met. And, the most recent review of the home stated the foster parents would adopt. The children have lived in their current foster home since October 2021, and the DHHS caseworker testified at the termination hearing that the children have bonded with their foster parents.

Moreover, the children's integration into their foster family is only one of the considerations when determining if termination is in their best interests. And the parents continue to dodge the steps necessary to provide for the children's "long-term nurturing," "growth," or their "physical, mental, and emotional condition and needs." *See* Iowa Code § 232.116(2); *see also In re C.S.*, No. 16-1593, 2017 WL

362008, at *2 (Iowa Ct. App. Jan. 25, 2017) (noting unresolved substance abuse, even after receiving treatment, prevents a parent from providing safe conditions for their children). The parents have not meaningfully changed the dangerous behavior that led to the children's initial removal. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)). Termination will put the children another step closer to the permanency their parents have not yet provided for them. *See In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997) ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together.").

In this case, it is clear the parents care for their children. Still, the younger child has never been in the parents' care and the older one was removed at only ten months old; even if a strong bond exists, it does not outweigh our other considerations.

C. Permissive Exceptions.

Both parents argue the juvenile court should have exercised the section 232.116(3)(c) exception, which allows the court to forgo termination upon finding "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The exception is permissive rather than mandatory, *In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021), and after the State proves the grounds for termination, "the parent resisting termination bears the

burden to establish an exception to termination." *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs." *D.W.*, 791 N.W.2d at 709.

Though the parents argue they have a close bond with their children because the children get upset at the end of their visits, neither parent has shown this bond was strong enough to overcome the need for termination founded in the parents' inability to maintain sobriety or stable housing. On our de novo review, the application of the section 232.116(3)(c) permissive exception is not warranted.

D. Six-Month Extension.

The final argument, raised only by the mother, is that the juvenile court should have granted her a six-month extension to work toward reunification. *See* Iowa Code § 232.104(2)(b). This option requires the parent seeking the extension show the "impediments to placing [the child] with [the parent would] not exist in six months." *W.T.*, 967 N.W.2d at 323. The juvenile court would then have to enter an order "enumerat[ing] the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). This balance takes into account the time for reunification already built into the code. *See C.B.*, 611 N.W.2d at 494 ("While we recognize the law requires a 'full measure of patience with troubled parents who attempt to remedy a lack of parenting skills,' Iowa has built this patience into the statutory scheme of Iowa Code chapter 232." (citation omitted));

*P.L.*, 778 N.W.2d at 39 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

The mother argues six additional months would give her time to demonstrate her sobriety and figure out her housing situation. She points specifically to a recent case by a panel of this court, *In re G.B.*, No. 22-0439, 2022 WL 1657190, at *5 (Iowa Ct. App. May 25, 2022), where a positive drug test was "the only fly in the ointment" preventing a six-month extension. But, *G.B.* involved a parent who had a positive test nine months before termination and then only negative tests afterwards. 2022 WL 1657190, at *5–6. That demonstrated sobriety is a far cry from the case at hand. This record does not establish that six more months would allow the mother to safely regain custody of her children, especially when she has made no meaningful progress toward sobriety or stable housing in the nearly a year this case was pending. *See C.B.*, 611 N.W.2d at 495 ("Time is a critical element. A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."); *In re K.G.*, No. 18-1187, 2019 WL 7190047, at *2 (Iowa Ct. App. Feb. 20, 2019) ("The burden is not on the State to prove an extension is not appropriate as the mother asserts. Rather, the court needs evidence to support a finding the mother would be able to care for the children within six months in order to grant an extension."). Without any indication in the record that six months would be enough time for the mother to take care of the impediments to reunification, a six-month extension is inappropriate.

III. Conclusion.

On our de novo review of the termination of the mother's and father's parental rights to these two children, we find the State established the ground for termination, the children's best interests are served by termination, the requested permissive exception to termination does not apply, and an additional six-months for the mother to work toward reunification is not warranted. We affirm the juvenile court.

**AFFIRMED.**